IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| WINSTON DOUGLAS )<br>)<br>) | CIVIL ACTION NO: |
| Plaintiff, )<br>v. ) | JURY TRIAL DEMANDED |
| )<br>THE CITY OF CHESAPEAKE, )<br>VIRGINIA )<br>)<br>Serve: City Attorney )<br>     306 Cedar Road )<br>     Chesapeake, VA 23322 )<br>)<br>Defendant. )<br>) | |

## COMPLAINT

Plaintiff, Winston Douglas ("Douglas" or "Plaintiff"), by counsel, for his Complaint against Defendant, The City of Chesapeake (the "City" or "Norfolk" or "Defendant"), alleges as follows:

### THE PARTIES

1. Plaintiff Douglas is a natural person, and at all times relevant hereto was, a citizen of the Commonwealth of Virginia, residing in the city of Norfolk, Virginia.

2. Defendant the City of Norfolk is a body politic and corporation created and existing under the laws of the Commonwealth of Virginia.

### JURISDICTION AND VENUE

3. This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §§ 1331. Venue properly lies in this Court because the controversy involves Defendant's behavior at Plaintiff's place of employment, in the Eastern District of Virginia.

1

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. Prior to instituting this suit, Douglas timely filed three administrative claims with the Norfolk Office of the Equal Employment Opportunity Commission (EEOC) on January 6, 2020, January 17, 2020 and May 6, 2020.  A true and correct copy of each Charge of Discrimination is attached to this complaint and incorporated by reference as Exhibits "A", "B" and "C."  All three charges of discrimination specifically claimed "retaliation" in violation of Title VII of the Civil Rights Act of 1964.

5. The EEOC failed to resolve the claims and issued three right-to-sue letters dated September 13, 2021.  A true and correct copy of the right-to-sue letters are attached to this complaint and incorporated by reference as Exhibits "D", "E", and "F".  Douglas received the EEOC's right-to-sue letters on September 16, 2021.  Plaintiff has filed his complaint within 90 days from the date he received his notices authorizing the right to bring this action.

## STATEMENT OF FACTS

6. Plaintiff Douglas is a 39-year-old Black male.

7. Douglas began employment with Defendant on April 1, 2019, as a Water Production Maintenance Worker.

8. Shortly after commencing his employment with Defendant, Douglas experienced sexually harassing homophobic comments from two co-workers.  Douglas asked the coworkers to refrain from making such comments in his presence.  The co-workers refused to refrain.

9. Douglas then reported the continued harassing comments to his immediate supervisor, John Chatman "Chatman."  Chatman told Douglas to "get over it" and "get past it."

10. On July 1, 2019 Douglas began working under a new immediate supervisor, Demetrius Blow ("Blow").   Blow informed Douglas that he was aware of Douglas' prior complaints

regarding his co-worker's harassment and that Douglas needed to "turn a new chapter" and "forget about it."

11. Shortly thereafter Douglas noticed Blow started to scrutinize his work and refused to allow Douglas time off from work without being docked pay.

12. Additionally, on or about October 5, 2019, Douglas was solely assigned a task, removing ventilation air ducts from a ceiling, that was always previously considered (and assigned as) a two-person job. Douglas considered this a form of retaliation for his prior complaint of harassment.

13. Then in or about October 9, 2019, Douglas spoke to Kelvin Foye ("Foye"), Defendant's Human Resources Manager. Douglas informed Foye that he felt he was being retaliated against based on his prior complaints of harassment.

14. Almost immediately Douglas was informed that he could no longer apply for and work overtime.

15. On October 22, 2019 Douglas' immediate supervisor, Blow, and the Water Production Administrator, Alex Echols ("Echols"), informed Douglas that because he had completed his first six months of employment with Defendant he would soon receive a probationary evaluation.

16. This six month probationary evaluation was specifically mandated by Defendant's employment policy, "Section 2.10."

17. Douglas did not receive his six-month review.

18. Notably, two Caucasian immediate co-workers of Douglas, Mr. Woody ("Woody") the Plant Mechanic and Patrick Albert ("Albert") (both of whom began employment after Douglas) timely received their six-month evaluations.

19.     Douglas filed a First Charge of Discrimination against Defendant on November 22, 2019 citing "sex" and "retaliation."

20.     Douglas then filed a Second Charge of Discrimination against Defendant on January 6, 2020 specifically citing "retaliation" and alleging that he felt her was being treated unfairly (*e.g.,* being solely assigned two-person projects and being improperly deemed ineligible for promotion).

21.     On January 17, 2020, Douglas was stripped of his "on-call" status by his supervisor. This adversely affected Douglas economically – immediately reducing his potential hours and pay; and long-term by restricting his skills and experience.

22.     Douglas then filed a Third Charge of Discrimination against Defendant on January 17, 2020 specifically citing "retaliation" and alleging that he felt he was being treated unfairly (*e.g.,* being denied "on-call" status and other opportunities) in retaliation for prior charges of discrimination with the EEOC (the First and Second Charges).

23.     On March 13, 2020 (18 days from his one year anniversary with Defendant) Echols called Douglas into his office. Echols informed Douglas he was going to give him his annual evaluation. Douglas noticed the evaluation was approximately thirty pages. Douglas had learned during his employment with Defendant that the average annual evaluation was generally two to three pages. Douglas further noticed that the evaluation was titled "Probationary Evaluation" instead of "Annual Evaluation" in violation of the City's employment policies.

24.     Echols cited numerous allegations contained within the evaluation wherein Douglas' was alleged to have failed to adequately perform tasks or violated City policies. Douglas attempted to explain why those allegations were wholly false. Echols refused to allow Douglas any explanation or defense.

25.     Nonetheless, Echols told Douglas that he had received a score of 2.80 – which was a "solid score." Echols then told Douglas his employment was secured and that his probationary period would be extended for an additional 6 months. Douglas' white co-workers (Woody and Albert) did not have their probationary periods extended.

26.     Four days later, on March 17, 2020, Defendant fired Douglas and informed him he was "not eligible for rehire."

## COUNT I
### Retaliation in Violation of Title VII -- 42 USC 2000e *et seq*.

27.     Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

28.     Defendant adversely affected Plaintiff's employment assignments and opportunities as retaliation for Douglas' complaints of sexual harassment and retaliation.

29.     Plaintiff's formal opposition (*i.e.,* filing four charges of discrimination) to Defendant's retaliation constitutes protected activity.

30.     The effect of the events described above has been to deprive Douglas of equal employment opportunities in retaliation for exercising his federally protected rights.

31.     Defendants' conduct has been intentional, deliberate, willful, wanton, malicious, reckless, and in conscious disregard of Plaintiff's rights.

32.     As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost back pay, lost front pay, emotional distress, reputational harm, embarrassment, humiliation and loss of enjoyment of life.

33.     Plaintiff is entitled to recover her reasonable attorney fees, costs and expert witness expenses.

## COUNT I
### Racial Discrimination in Violation of Title VII
(42 USC 2000e *et seq.*)

34. Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

35. The Defendant's conduct as alleged at length herein constitutes discrimination based on race in violation of Title VII.

36. Defendant, through the actions of Blow and Echols, discriminated against Plaintiff based on his race.

37. Unlike his white coworkers, Douglas was unfairly scrutinized, illegally punished and ultimately denied opportunities including but not limited to surviving his probationary period and becoming a non-probationary employee of the City.

38. Defendant's conduct was intentional and its violations of federal law were willful.

39. As a direct and proximate result of Defendant's violation of Title VII based on Plaintiff's race, Plaintiff has suffered damages, including but not limited to loss of past and future income and fringe benefits, loss of professional reputation, mental anxiety and emotional distress.

40. Plaintiff is entitled to recover his reasonable attorney fees, costs and expert witness expenses pursuant to Title VII.

### JURY DEMAND

Plaintiff demands a jury trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Winston Douglas, prays for entry of judgment in favor of Plaintiff and against Defendant, The City of Chesapeake, Virginia in the form of the following relief:

    a.    Back Pay;

    b.    Front Pay;

    c.    Compensatory Damages;

    e.    Interest;

    f.    Attorneys' fees and court costs associated with this suit; and

    g.    Other such relief as may be appropriate to effectuate the purpose of justice.

Date: December 10, 2021        Respectfully submitted,

WINSTON DOUGLAS

__/s/_ Todd M. Gaynor_____
Todd M. Gaynor, Esquire
Virginia Bar No.: 47742
GAYNOR LAW CENTER, P.C.
440 Monticello Avenue, Suite 1800
Norfolk, Virginia 23510
PH: (757) 828-3739
FX: (75) 257-3674
EM: tgaynor@gaynorlawcenter.com

*Counsel for Plaintiff*